THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JASON JACOBS, | | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:24-cv-233 |
| | : | |
| MIAMI CNTY., OHIO, *et al.*, | : | Judge Walter H. Rice |
| Defendants. | : | |

---

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS MIAMI COUNTY, OHIO, DAKOTA BRISSET, AND BRAD
BLACKBURN (DOC. #47) AND OVERRULING MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF JASON JACOBS (DOC. #49); JUDGMENT TO ENTER IN
FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

This matter is before the Court on the Motion for Summary Judgment of

Defendants Miami County, Ohio, Dakota Brisset, and Brad Blackburn (Defendants'

Motion, Doc. #47) and the Motion for Partial Summary Judgment of Plaintiff Jason

Jacobs (Plaintiff's Motion, Doc. #49).  For the reasons set forth below, Plaintiff's

Motion is OVERRULED and Defendants' Motion is SUSTAINED.

I.    **Factual Background and Procedural History**

A.    **Undisputed Facts**

The volume of music played by Plaintiff at his property was a longstanding

source of tension between Plaintiff and his neighbors, specifically his next-door

neighbors, Michael Then and Leslie Kodysz-Then (collectively "the Thens"). (J. Jacobs Dep., Doc. #38-1, PAGEID 303-04). The Thens made several complaints to the Miami County, Ohio, Sheriff's Department ("Sheriff") from July 2022 through September 2023. (*See, e.g.*, Incident Reports, Doc. #41-2, PAGEID 446-48; Doc. #41-3, PAGEID 449-53; Doc. #41-4, PAGEID 454-61). Miami County Sheriff Dave Duchak conducted a mediation between Plaintiff and the Thens in May 2023. (D. Duchak Depo., Doc. #40-1, PAGEID 399-401).

However, the Thens called the Sheriff on September 21, 2023, again complaining of Plaintiff playing loud music; for the first time, the Thens complained of Plaintiff playing music with explicit and racially-charged language. (Doc. #41-4, PAGEID 458). Sheriff Deputy L.B. Stanaford watched the surveillance video taken by the Thens, and "heard extremely loud music and the word 'fuck' could be heard multiple times." (*Id.*). On September 22, 2023, Stanaford provided the details to Miami County Municipal Prosecutor Jared Chamberlain, who advised Stanaford that, based on the information provided, Plaintiff could be charged with disorderly conduct. (*Id.* at PAGEID 459). Later that day, Stanaford provided Plaintiff with a verbal warning about potential criminal liability. (*Id.*).

On November 7, 2023, the Thens again called the Miami County Sheriff complaining about the music at Plaintiff's house. (Incident Report, Doc. #41-5, PAGEID 469). Sheriff Deputies Dakota Brisset and Brad Blackburn responded. (*Id.*). The Thens told Brisset and Blackburn that the music played by Plaintiff was "'racist,' 'sexist,' and [contained] lyrics outlining people being murdered[.]" (*Id.*).

2

Brisset and Blackburn interviewed Plaintiff, and Brisset told Plaintiff that he would be speaking to the Prosecutor's Office about a potential charge of disorderly conduct, based on the "grossly abusive language" of the music being played. (*Id.* at PAGEID 469-70). Blackburn informed Plaintiff that there was no applicable noise ordinance, but that it was the vulgar nature of the music that might subject him to liability for disorderly conduct. (Body Cam Video, 9:20-9:29, 29:50-30:13). Logan admitted to Blackburn that he was the one playing profane music. (Body Cam Video, 32:20). Plaintiff, in turn, told Blackburn that, as "a grown adult," Logan could be issued the warning. (Body Cam Video, 35:30-35:35).

Blackburn took statements from five witnesses in the neighborhood, all of whom described the loud, disruptive music from Plaintiff's house, and Brisset received a folder from the Thens containing additional video evidence. (Doc. #41-5, PAGEID 489-506). Brisset took this information to a Municipal Prosecutor, who advised him to file the summons against Plaintiff. (Trial Tr., Doc. #42-1, PAGEID 528). Duchak agreed with the decision to file the summons, premised on the idea that Plaintiff, as the head of household, was responsible for what took place on his property. (Doc. #40-1, PAGEID 432). On November 28, 2023, Brisset and Blackburn returned to Plaintiff's house to issue the citation against him for disorderly conduct in violation of OHIO REV. CODE § 2917.11(A)(2) ("the statute"). (Doc. #47, PAGEID 822, citing Citation Doc. #44-1, PAGEID 737). This was the only disorderly conduct citation issued by Brisset, Blackburn, or Duchak with respect to loud music, and the trial judge dismissed the charge, since the prosecution

3

produced no evidence that Plaintiff was the person playing the music.  (Doc. #40-1, PAGEID 419-20; Doc. #42-1, PAGEID 704; Doc. #46-1, PAGEID 799; Resp. to Disc., Doc. #48-1, PAGEID 844-45).

## B.    Litigation History

On August 23, 2024, Plaintiff filed suit against Miami County and Brisset and Blackburn in both their individual and official capacities.  (Compl., Doc. #1, PAGEID 1).  Plaintiff filed an Amended Complaint on February 14, 2025, adding State of Ohio Attorney General Dave Yost as a Defendant.  (Doc .#14)  Therein, he raises a facial challenge to the Criminal Statute against all Defendants (Claim One), alleging that the statute's prohibition on "offensively coarse utterance[s]" and "grossly abusive language" is viewpoint based, vague, and overbroad, in violation of the First Amendment.  (*Id.* at PAGEID 83, ¶¶ 36-37).  Plaintiff also raises an "as-applied" challenge (Claim Two), claiming that, by issuing the citation, "Defendants were not acting in the public's interest but were rather acting in bad faith to retaliate against Jacobs for offending their sensibilities" (*id.* at PAGEID 85, ¶ 53), and "Defendants' actions were aimed at silencing Jacobs and deterring him from exercising his right to free speech." (*Id.* at ¶ 54). In Claim Three, Plaintiff raises an additional "as-applied" challenge, asserting that the statute violates his First Amendment right to free association.  Plaintiff alleges that his son was the one who made the choice of the content and volume of the music played (*id.* at PAGEID 82, ¶ 26), but that "Defendants targeted and punished Jacobs for nothing other than his association with his son." (*Id.* at PAGEID 86, ¶

4

65). Finally, Plaintiff accuses all Defendants of malicious arrest and prosecution (Claim Four), in violation of the Fourth Amendment. (*Id.* at PAGEID 87, ¶¶ 71-79). Yost was dismissed from the case on May 15, 2025. (Joint Stip. Of Dismissal, Doc. #24, PAGEID 152).

On November 3, 2025, Defendants moved for summary judgment, arguing that "[b]efore even reaching the merits, this Court should dispose of the individual capacity § 1983 claims because of Plaintiff's inappropriate 'group pleading.'" Specifically, Defendants claim that Plaintiff failed to designate any facts as to how Brisset and Blackburn individually violated Plaintiff's constitutional rights, and that, consequently, Plaintiff's 42 U.S.C. § 1983 suit cannot be sustained against those defendants in their individual capacities. (Doc. #47, PAGEID 823, citing *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 876 (6th Cir. 2024); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Moreover, Defendants argue that Brisset and Blackburn are entitled to qualified immunity, because through their actions, "they were merely enforcing a properly enacted statute with prior, prosecutorial approval." (*Id.*, citing *Vaduva v. City of Xenia*, 780 F. App'x 331, 336-338 (6th Cir. 2019); Doc. #40-1, PAGEID 408; B. Blackburn Dep., Doc. #44, PAGEID 723, 726).

Defendants raise several arguments as to why Plaintiff's claims against them are barred as matters of law. Defendants specifically argue that, to the extent Plaintiff lacks standing to seek injunctive or declaratory relief as to Claim One, since the alleged injuries of his arrest and prosecution have already

5

occurred, there is no imminent, impending injury, and ."Plaintiff here 'has not alleged that he intends in the future to engage in conduct' that R.C. 2917.11(A)(2) 'currently prohibits.'"  (Doc. #47, PAGEID 824, quoting *Vaduva*, 780 F. App'x at 339).  "Because Plaintiff does not present a proper 'occasion' to issue an injunction or declaratory judgment," and because Plaintiff may not recover money damages in a facial challenge, "he cannot prevail on 'Count I' of his Amended Complaint."  (*Id.* at PAGEID 825, citing *Green v. Mansour*, 474 U.S. 64, 73 (1985); *Blick*, 105 F.4th at 880)).  Defendants claim, moreover, that Plaintiff has failed to demonstrate any evidence that would "establish[] that no set of circumstances exists under which the Act would be valid, *i.e.,* that the law is unconstitutional in all of its applications".  (*Id.* at PAGEID 826, quoting *Wash. St. Grange v. Wash. St. Republican Party*, 552 U.S. 442, 449 (2008) (internal quotation marks omitted)).  Accordingly, Defendants conclude, Plaintiff cannot rebut the heavy presumption of constitutionality, and cannot succeed on a facial challenge, even assuming *arguendo* that he has standing.  (*Id.*, quoting *State v. Carrick*, 131 Ohio St. 3d 340, 2012-Ohio-608, ¶¶ 12, 20; *Fabrey v. McDonald Vill. Police Dep't*, 70 Ohio St. 3d 351, 352 (1994)).

Defendants argue that "the content neutral statute was not applied to Plaintiff 'in a viewpoint specific manner," and, thus, Plaintiff's as-applied challenge fails.  (Doc. #47, PAGEID 827, citing *Oswald v. Lakota Loc. Sch. Bd.*, 744 F. Supp.3d 843, 856, 858 (S.D. Ohio 2024)).  Specifically, Defendants assert, the undisputed evidence shows that Blackburn and Brisset issued the citation to

6

Plaintiff for unreasonable noise, rather than the vulgarity of any music, and that Plaintiff's speculation to the contrary is insufficient to overcome summary judgment. (*Id.* at PAGEID 827-28, citing Doc. #40-1, PAGEID 412, 417; Doc. #44, PAGEID 721, 730). Moreover, Defendants argue that Brisset and Blackburn are entitled to qualified immunity, since the right to play music at an unreasonable volume—in contravention of a duly-enacted statute—was not clearly established at the time the citation was issued. (*Id.* at PAGEID 828, citing *Michigan v. DeFillippo*, 443 US. 31, 38 (1979); *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016)). The prosecutor's decision to charge Plaintiff with violating the statute is evidence that Brisset and Blackburn reasonably believed their conduct to be lawful, which entitles those Defendants to summary judgment on that ground alone. (*Id.* at PAGEID 829, quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); citing *Novak v. City of Parma*, 33 F.4th 296, 303, 305 (6th Cir. 2022).

Defendants assert that Claim Three fails at the outset, because the right to free association with family members arises not under the First Amendment, but the Fourteenth, which is never mentioned in the Amended Complaint. (Doc. #47, PAGEID 829, quoting *Blick*, 105 F.4th at 884). Moreover, Plaintiff has not alleged that he participated in his son's decision to play outdoor music, and thus, he cannot proceed under a theory of "right to expressive association[.]" (*Id.* at PAGEID 829-30, citing *Blick*, 105 F.4th at 882, 884; Doc. #38-1, PAGEID 325, 327-28, 330-31). Finally, Defendants claim that the citation being for excessive noise means that Plaintiff has not been deprived of any right to viewpoint or content

7

expression, only the volume at which he expresses himself. Thus, Defendants conclude, they are entitled to summary judgment on Claim Three. (*Id.* at PAGEID 83-, citing *Saieg v. City of Dearborn*, 641 F.3d 727, 741 (6th Cir. 2011)).

As to Claim Four, Defendants argue that the video evidence provided by the Thens, along with the statements from the Thens and five other witnesses, gave Brisset and Blackburn probable cause to issue the citation; consequently, Defendants claim, Brisset and Blackburn cannot be liable for malicious arrest. (Doc. #47, PAGEID 830-31, quoting *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018); citing *Germany v. Watkins*, No. 23-3812, 2024 WL 2052153, *3 (6th Cir. May 8, 2024)). Finally, Defendants assert that because the prosecutor alone decided whether to proceed with charges, a claim for malicious prosecution against Brisset and Blackburn may not be maintained, and Brisset and Blackburn are entitled to summary judgment on all claims. (*Id.* at PAGEID 832-33, quoting *Sykes v. Anderson*, 625 F.3d 294, 314 (6th Cir. 2010); *Johnson v. Ward*, 43 F. App'x 779, 783-784 (6th Cir. 2002)).

As to Miami County, Defendants argue that, because: (1) Plaintiff failed to plead a theory of liability under *Monell v. v. Dep't of Soc. Servs*, (2) a county may not be held "vicariously liable in §1983 actions merely because [it] employ[s] someone who has committed a constitutional violation[,]" and (3) Brisset and Blackburn did not commit a constitutional violation, Miami County is entitled to summary judgment. (Doc. #47, PAGEID 833-34, quoting *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017); citing *Monell*, 438 U.S. 658, 694

8

(1978); *Blick*, 105 F.4th at 884; *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019)).

In his memorandum *contra*[1], Plaintiff argues that, despite the dismissal, the citation had a chilling effect on his speech, given that a conviction could impact his career as a law enforcement officer. (Memo. in Opp., Doc. #55, PAGEID 1021, citing Doc. #38-1, PAGEID 337-38). He also argues that the existence of probable cause is materially disputed as to the following facts: (1) that Brisset and Blackburn were enforcing a neutral noise statute, rather than engaging in content-based retaliation; (2) the officers reasonably believed that Plaintiff was the one playing the music at an excessive volume on November 7, 2023; (3) the officers believed at all that Plaintiff was acting recklessly; and (4) Plaintiff was charged and prosecuted based on his own conduct, rather than Plaintiff's association with his son. (*Id.* at PAGEID 1022-23). Plaintiff also argues that there is a material dispute as to whether Miami County deviated from normal practice by making Plaintiff the only person prosecuted for violating OHIO REV. CODE § 2917.11(A)(2), and as to whether there was probable cause to cite Plaintiff. (*Id.* at PAGEID 1023).

As to the First Amendment claims, Plaintiff argues that, to the extent that he was responsible for "profane, racist, and sexist" music on his property, the playing of that music constituted protected conduct. (Doc. #55, PAGEID 1024-25,

---

[1] Plaintiff filed his Motion for Leave to File Excess Pages on January 23, 2026 (Doc. #65), almost two months after filing his fifty-nine-page memorandum *contra* on November 28, 2025. (Doc. #55). Given the closeness of the trial date, the Court SUSTAINS the Motion for Leave (Doc. #65) and analyzes the memorandum *contra* in its entirety.

9

citing *Ward v. Rock Against Racism,* 491 U.S. 781, 790 (1989); *Sandul v. Larion,* 119 F.3d 1250, 1254 (6th Cir. 1997); Doc. #41-5, PAGEID 469-97).  Moreover, Plaintiff's vocal disagreements with Brisset and Blackburn regarding whether and how profanity may be protected under the First Amendment is similarly protected conduct.  (*Id.* at PAGEID 1025-26, quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987); citing *Wood v. Eubanks*, 25 F.4th 414, 423 (6th Cir. 2022); Doc. #46-1 PAGEID 784-85).  *Second*, Plaintiff claims that the government action—issuance of a citation and prosecution for violation of OHIO REV. CODE § 2917.11(A)(2)—would deter a person of "ordinary firmness" from engaging in such conduct.  (*Id.* at PAGEID 1026-27, citing *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 628 (6th Cir. 2010); *Tamm v. Nerad*, 2025 WL 2674302, *5 (6th Cir. Sept. 18, 2025)).

*Third*, Plaintiff argues that a reasonable jury could conclude that Brisset and Blackburn lacked probable cause to issue the citation and for Miami County to prosecute Plaintiff, and that Brisset and Blackburn were "the driving force behind the prosecution" of Plaintiff; consequently, Plaintiff claims, there was "a causal connection between a defendant's retaliatory animus and subsequent injury[.]" (Doc. #55, PAGEID 1027-28, quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006); citing *Blackwell v. Nocerini*, 123 F.4th 479, 482-84, 489 (6th Cir. 2024); Doc. #41-5, PAGEID 473; Doc. #44, PAGEID 723-24; Doc. #46-1, PAGEID 786-89).  Plaintiff asserts that Brisset and Blackburn stopped treating the Thens' noise complaints as an ordinary dispute and began treating them as potential criminal matters only when the subject of the complaints became the language in the music, rather than

10

the volume. (*Id.* at PAGEID 1029-30, citing Doc. #40-1, PAGEID 394-414; Body Cam Video, 30:05-30:12). Specifically, the issuance of the citation departed from the previous Sheriff's Office directive that no citation should be issued unless an officer witnessed the behavior personally. (*Id.* at PAGEID 1030-31, citing Doc. #41-5, PAGEID 473). "Taken together, that timing and the sharp departure from normal practice are strong circumstantial evidence of retaliatory motive." (*Id.* at PAGEID 1031). Further, the wide discretion that the Sheriff has in deciding whether to issue citations---and that Plaintiff received the only citation for excessive noise out of 380 complaints received by the Sheriff's Office since 2020— is additional evidence that probable cause did not exist, and was instead a smokescreen for Brisset and Blackburn's discriminatory animus. (*Id.* at PAGEID 1032-33, citing *Gonzalez v. Trevino*, 602 U.S. 653 (2024); *Nieves v. Bartlett*, 587 U.S. 391 (2019)).

Plaintiff also argues that the question of whether probable cause existed is one of fact for the jury, and that there is a legitimate dispute as to "whether any objectively reasonable officer could believe that probable caused existed at all" with respect to Plaintiff. (Doc. #55, PAGEID 1035, citing *Brown v. City of Albion*, 136 F.4th 331, 343 (6th Cir. 2025)). Specifically, Plaintiff asserts, there was no evidence that Plaintiff himself made any unreasonable noise; nor was there evidence of Plaintiff communicating the excessive noise or language to another person, much less "recklessly," as required by the statute. (*Id.* at PAGEID 1037, 1038, citing OHIO REV. CODE § 2917.11(A)(2); Doc. #40-1, PAGEID 432-34). Plaintiff

11

claims that Brisset and Blackburn did not adequately consider exculpatory evidence, such as Plaintiff's son stating that he was playing the music, and Duchak's reliance on an illegal "head of household" theory, demonstrate that probable cause did not exist. (*Id.* at PAGEID 1039-40, citing *Ahlers v. Chebil*, 188 F.3d 365, 372 (6th Cir. 1999); *In re Feagan*, 2020-Ohio-3788, 156 N.E.3d 359 (1st Dist.); Doc. #40-1, PAGEID 432; Body Cam Video at 7:50-8:03). Taken together, Plaintiff concludes that he has demonstrated that probable cause did not exist and, consequently, he has met his *prima facie* burden for a First Amendment claim, shifting the burden to Defendants" to prove that they would have taken the same action even if his speech had never occurred[]." (*Id.* at PAGEID 1041, citing *Hartman*, 547 U.S. at 260-66).

Plaintiff argues that Defendants cannot do this, for three reasons. *First*, Defendants have failed to identify any standard by which noise is considered excessive under the statute, and as discussed above, they have not issued any other citation for excessive noise in the last five years. (Doc. #55, PAGEID 1041, citing Doc. #40-1, PAGEID 405-07, 417). *Second*, there was no discussion of criminal liability when the gravamen of the complaints was merely noise level; it was only after Brisset and Blackburn received complaints about the music's explicit content that Defendants sought to cite Plaintiff. (*Id.* at PAGEID 1042). *Third*, the "head of household" theory used by Duchak to justify the issuance of the citation when it was Plaintiff's son who played the music was factually dubious and legally untenable. (*Id.*). Plaintiff concludes that, given how thin the

12

justifications were to cite and prosecute him, "[a] reasonable jury could find that Defendants would not have pursued a criminal summons and prosecution against Jason Jacobs in the absence of that protected speech. That is enough to defeat summary judgment on his First Amendment retaliatory prosecution claim." (Doc. #55, PAGEID 1042-43, citing *Hartman*, 547 U.S. at 265-66).

As to Claim One, a facial challenge to OHIO REV. CODE § 2917.11(A)(2), Plaintiff incorporates by reference its reasoning set forth in its Motion for Partial Summary Judgment. (Doc. #55, PAGEID 1043, citing Pltf. Motion, Doc. #49, PAGEID 879-90). Plaintiff argues that the statute is an impermissible content-based restriction because criminalizing spoken language that is "offensively coarse" or "'grossly abusive'. . . does not target how something is said, nor does it regulate conduct separate from speech. It criminalizes speech because of **what is said.** That is, the words themselves. Thus, it regulates speech because of the topic discussed and the ideas it conveys." (Doc. #49, PAGEID 880-81 (emphasis in original), citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Plaintiff also claims that the offensiveness of the lyrics constitutes a viewpoint, and thus, the statute classifying such language as disorderly conduct is impermissible viewpoint discrimination. (*Id.* at PAGEID 881-83, citing *Matal v. Tam*, 582 U.S. 218, 223, 243 (2017) (plurality); *Cohen v. California*, 403 U.S. 15, 25 (1971); *Ison v. Madison Local Sch. Dist. Bd. of Educ.,* 3 F.4th 887, 894-95 (6th Cir. 2021)). Plaintiff concludes that there is nothing resembling a compelling governmental interest to

13

justify such discrimination, OHIO REV. CODE § 2917.11(A)(2) violates the First Amendment. (*Id.* at PAGEID 884-85).

Plaintiff further argues that OHIO REV. CODE § 2917.11(A)(2) is facially overbroad, also in violation of the First Amendment. (Doc. #49, PAGEID 885-86, quoting *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012); citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002); *Houston v. Hill*, 482 U.S. 451, 465-66 (1987)). Plaintiff claims that, "[b]y its plain text, [the statute] criminalizes a vast swath of expression that is protected by the First Amendment, including spoken words, gestures, or displays that are merely offensive or coarse. . . . This sweeping scope chills protected speech and leads to arbitrary and discriminatory enforcement" (*Id.* at PAGEID 887). Finally, Plaintiff argues that the statute is unconstitutionally vague, because the operative phrase is undefined and circular—"offensive speech" is whatever the particular listener deems offensive. (*Id.* at PAGEID 887-89, quoting Doc. #40-1, PAGEID 388; citing *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971); *Hicks v. Clermont Cnty. Bd. of Comm'rs*, No. 1:17-cv-677, 2018 WL (S.D. Ohio Dec. 6, 2018) (Black, J.)).

Plaintiff argues that Claim Three, Free Association, is properly raised as a First Amendment claim, because it pertains to Plaintiff's "right to associate for the purpose of speaking[.]" (Doc. #55, PAGEID 1043, citing *Hartwell v. Houghton Lake Cmty. Sch.*, 755 F. App'x 474, 477 (6th Cir. 2018)). Plaintiff claims that under any theory advanced by Defendants, he was cited only because he associated with his son; that he did not gather with his son "for the 'purpose' of disseminating a

14

certain message" is immaterial, as the Supreme Court and United States Court of Appeals for the Sixth Circuit have never defined the right to free speech association so narrowly. (*Id.* at PAGEID 1044-45, citing *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984); *Miller v. City of Cincinnati*, 622 F.3d 524, 538-39 (6th Cir. 2010)). Taken together, Plaintiff argues, he has set forth enough disputed issues of material fact for all claims against Brisset and Blackburn to proceed to trial.

Plaintiff also argues that, for several reasons, Miami County may be held liable under *Monell*. *First*, he posits that Sheriff Duchak, as the final decisionmaker regarding law enforcement in the county, ratified the actions of Brisset and Blackburn via the "head of household" theory to which he testified. (Doc. #55, PAGEID 1045-47, quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986); *Lipman v. Budish*, 974 F.3d 726, 746 (6th Cir. 2020); citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Monell*, 436 U.S. at 694; Doc. #40-1, PAGEID 385-86, 408-09). Plaintiff claims that "[a] jury could treat that testimony" by Duchak regarding his theory of liability "as ratification by a final policymaker of the very theory that made this prosecution unconstitutional." (*Id.* at PAGEID 1047).

*Second*, Plaintiff asserts that Miami County could be subject to *Monell* liability under a "failure to train" theory. (Doc. #55, PAGEID 1048, citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020). Specifically, Duchak sent Brisset and Blackburn to

15

investigate noise disturbances despite having issued no guidance on when music is "unreasonably noisy" under the statute, and despite those officers being ill-informed regarding the statute and the First Amendment.  (*Id.* at PAGEID 1048-49). *Third*, Plaintiff argues that his status as the only person cited for violating the statute, and Brisset and Blackburn's "focus[] on 'explicit' and 'racist' lyrics," (*id.* at PAGEID 1050), could reasonably be viewed by the trier of fact as a Miami County-dictated "custom of tolerating content based, retaliatory use of disorderly conduct against disfavored speakers."  (*Id.* at PAGEID 1051).  As any of those three theories would subject Miami County to *Monell* liability, Plaintiff argues that summary judgment is inappropriate.  (*Id.* at PAGEID 1052).  Moreover Plaintiff argues that Defendants' "group pleading" argument is a red herring, as 42 U.S.C. § 1983 claims are not subject to heightened pleading standards, and the individual Defendants were still on fair notice of the claims against them.  (*Id.* at PAGEID 1051-52, citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (*per curiam*); *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *R.A. v. Best W. Int'l, Inc.*, No. 2:23-cv-3459, 2025 WL 961502 (S.D. Ohio Mar. 31, 2025) (Marbley, J.)).

Finally, Plaintiff argues that Brisset and Blackburn are not entitled to qualified immunity, because they actually violated Plaintiff's constitutional rights and because "no reasonable officer could have believed their conduct was lawful."  (Doc. #55, PAGEID 1053, citing *Grawey v. Drury*, 567 F.3d 302, 310, 313 (6th Cir. 2009)).  Plaintiff claims that "Defendants had ample notice that officers

16

may not cause a prosecution in retaliation for protected speech when there is no probable cause." (*Id.*, citing *Hartman*, 547 U.S. at 260-66; *Sykes*, 625 F.3d at 308-14). Plaintiff further asserts that Brisset and Blackburn were on reasonable notice that they could not: (a) punish Plaintiff merely for playing offensive music; (b) issue a citation to Plaintiff absent probable cause; and (c) punish Plaintiff based on his association with his son, the one actually playing the music. (*Id.* at PAGEID 1054 (citations omitted)).

Plaintiff argues that "[a] jury could find that Blackburn induced a prosecution of Jason Jacobs, without probable cause, because of the content of the music and Jacobs's insistence on his First Amendment rights and on his son's rights[,]" (Doc. #55, PAGEID 1056), and that Brisset's decision to charge Plaintiff "rather than the son, even though the son admitted playing the music" could be reasonably interpreted by a jury "as retaliation for association and for speech." (*Id.* at PAGEID 1057). He asserts that *Carrick* is inapposite, as that case concerned only the volume of music and the time at which it was played, and did not address the content or viewpoint-based citation issued here. (*Id.* at PAGEID 1057-58, quoting *Carrick*, 2012-Ohio-608, ¶ 22). Finally, Plaintiff argues that the Deputy Prosecutor's involvement does not shield Brisset and Blackburn from liability, because Brisset and Blackburn proximately caused the issuance of the citation and subsequent prosecution despite there being no probable cause. (*Id.* at PAGEID 1058-59).

In reply, Defendants argue that Plaintiff's "retaliatory prosecution" argument is so distinct from First Amendment claims as they were pleaded in the Amended Complaint that it constitutes a distinct and new claim, which may not be raised for the first time in a memorandum *contra* a motion for summary judgment. (Reply, Doc. #63, PAGEID 1177, citing *Tucker v. Union of Needletrades, Indus. & Textile Emplees.*, 407 F.3d 784, 788 (6th Cir. 2005)). Specifically, Defendants assert, retaliatory prosecution cannot be part of a facial challenge to the statute, as such a challenge "attacks only the constitutionality of a state statute as it is written." (*Id.* at PAGEID 1178, citing *Patmon v. Mich. Supreme Ct.*, 224 F.3d 504, 510 (6th Cir. 2000); *Evans v. Yarbrough*, No. 00-3588, 238 F.3d 420 (TABLE), 2000 WL 1871706, *2 (6th Cir. Dec. 13, 2000)). Moreover, Defendants argue, Plaintiff's delineation of a section of his memorandum *contra* to his First Amendment Free Association claim, wherein he did not discuss retaliatory prosecution, means that Plaintiff did not intend for it to be included in Claim Three. Defendants further note that retaliatory prosecution and an as-applied challenge to the statute (Claim Two), while both invoking the First Amendment, address completely different questions, and that Plaintiff properly raised his malicious arrest and prosecution claim (Claim Four) under the Fourth, rather than First, Amendment. (*Id.* at PAGEID 1178-79, citing *Brown*, 136 F.4th at 337-38; *Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016)).

Defendants further argue that Plaintiff failed to address his facial (Claim One) and as-applied (Claim Two) First Amendment challenges to the statute in his

18

memorandum *contra*, and, consequently, he has abandoned those claims. (Doc. #63, PAGEID 1180-81, citing *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)). Further, while Defendants concede that Plaintiff attempted to address qualified immunity, they claim that he did so only in the context of "his brand new attempt at a 'retaliatory prosecution' claim, inapposite expressive association scenarios, and broad restatements of constitutional law." (*Id.* at PAGEID 1182, citing Doc. #55, PAGEID 1053-59). Defendants argue that such vague generalities are insufficient to defeat a qualified immunity claim, especially where, as here, there is a heavy presumption in favor of reasonableness when officers are enforcing a duly-enacted statute. (*Id.* at PAGEID 1182, citing *White v. Pauly*, 580 U.S. 73, 79 (2017); *Citizens in Charge, Inc.*, 810 F.3d at 441). Defendants also assert that Plaintiff failed to address Defendants' arguments regarding lack of standing (*i.e.*, failing to demonstrate an impending injury or substantial risk of harm). (*Id.* at PAGEID 1183-84, quoting *Grendell v. Supreme Ct. of Ohio*, 252 F.3d 828, 832 (6th Cir. 2001); *Oswald*, 744 F. Supp. 3d at 851). They conclude that, because of the above and because Plaintiff has failed to rebut the heavy presumption of a statute's constitutionality, "[s]ummary judgment . . . on Plaintiff's First Amendment 'facial' and 'as applied' challenges is therefore warranted." (*Id.* at PAGEID 1184).

Defendants also argue that, by using a First Amendment-based argument in his memorandum *contra*, Plaintiff has abandoned his malicious arrest and prosecution claim (Claim Four). (Doc. #63, PAGEID 1184-85). Even if Plaintiff had

19

preserved the claim, however, Defendants claim that it would still be unavailing, as Brisset and Blackburn had more than enough evidence to give them probable cause to issue the citation: "the Thens' complaint and corroborating statements from other neighbors, and the Defendant Deputies were aware of the Sheriff's related mediation with Plaintiff and the prior warning Plaintiff had received for the 'extremely loud music' that caused an 'annoyance to multiple people' and constituted 'unreasonable noise.'" (*Id.* at PAGEID 1185 (citations omitted)). "The probable cause found in this record defeats the otherwise abandoned malicious arrest and prosecution claims." (*Id.* at PAGEID 1188, quoting *Nieves*, 587 U.S. at 410 (Thomas, J., concurring); *Rice v. Jones*, No. 22-3972, 2023 WL 8369996, *2 (6th Cir. Jun. 23, 2023)). Defendants note that Brisset and Blackburn repeatedly asked Plaintiff to send them materials supporting his version of events, meaning that they were not "turning a blind eye" to exculpatory evidence. (*Id.* at PAGEID 1186). Finally, Plaintiff cannot prevail on a malicious arrest and prosecution claim, even if properly preserved, because Defendants did not participate in the decision to prosecute Plaintiff; nor did they submit any false information to the Deputy Prosecutor, who made the ultimate decision to prosecute Plaintiff. (*Id.* at PAGEID 1189-90, quoting *Sykes*, 625 F.3d at 314).

Even if the claims have not been abandoned, however, Defendants argue that Plaintiff cannot defeat qualified immunity, because "[a] reasonable person in the position of Deputies Brisset and Blackburn 'would not have thought that [they] were] acting unlawfully,' especially when the prosecutor approved the disorderly

20

conduct charge." (Doc. #63, PAGEID 1191 (brackets in original), quoting *Skovgard v. Pedro*, 448 F. App'x 538, 547 (6th Cir. 2011)). Defendants claim that Plaintiff's argument that he was issued a citation due to his criticism of Brisset and Blackburn and their consequent animus toward him is conclusory and belied by the record. Also, the chronology of the dispute shows that the decision to issue the citation came only after Captain Wheeler reversed himself and instructed Brisset to present the evidence to the Deputy Prosecutor. (*Id.* at PAGEID 1191-93, citing Doc. #41-5, PAGEID 473-74; Doc. #44, PAGEID 723-24; Doc. #44-1, PAGEID 737; Doc. #46-1, PAGEID 785, 786, 788-89, 806-07). Finally, "because Plaintiff was not himself 'engaged in protected conduct,' his First Amendment claim based on 'association' cannot survive summary judgment." (*Id.* at PAGEID 1196-97, citing *Blick*, 105 F.4th at 882; Doc. #38-1, PAGEID 325, 327-28, 330-31).

As to Miami County, Defendants argue that "[t]he absence of an underlying constitutional violation by Deputy Brisset or Deputy Blackburn automatically destroys Plaintiff's *Monell* claim." (Doc. #63, PAGEID 1197, citing *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019)). Moreover, Defendants assert, Plaintiff's *Monell* claim fails because the Amended Complaint failed to put Miami County on notice of the gravamen of that claim. (*Id.* at PAGEID 1197-98, citing *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009)). Also, Plaintiff's *Monell* claim fails under any theory, as "mere acquiescence in a single discretionary decision by a subordinate is insufficient to show ratification." (*Id.* at PAGEID 1198 (internal quotation marks omitted), quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 656

21

(6th Cir. 1993)). Defendants argue that a failure to train or supervise theory is not viable, as neither Brisset nor Blackburn made the decision to cite and prosecute Plaintiff. (*Id.* at PAGEID 1198-99, citing *Berry v. Delaware Cnty. Sheriff's Office*, 796 F. App'x 859, 862, 864 (6th Cir. 2019)). Finally, Defendants assert that the lack of any "other allegedly retaliatory or otherwise unlawful disorderly conduct charge; therefore, [Plaintiff] cannot show a 'pattern of illegal activity' by the County that is '"similar" to the violative conduct alleged in the case at bar.'" (*Id.* at PAGEID 1199, quoting *Austin v. Mosley*, No. 23-1425, 2025 WL 448879, *5 (6th Cir. Feb. 10, 2025); citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Defendants conclude that no ground for *Monell* liability exists even if it had been pleaded.

The matters are now ripe for decision.

## II.    Legal Standards

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes

22

demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings," and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the

23

fact-finder. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. FED.R.CIV.P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, the court may also consider other properly presented materials in the record. FED.R.CIV.P. 56(c)(3).

### B.     Qualified Immunity

"The qualified-immunity standard is a familiar one. The doctrine 'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 437, 440 (6th Cir. 2016) (brackets in original), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-step test for establishing whether government officials are *not* entitled to qualified immunity: (1) whether plaintiff's constitutional rights or guarantees were violated; and (2) whether those rights and guarantees were "clearly established" at the time of violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A court may analyze either step first; in other words, if the rights at issue were not clearly established, then the Court need not determine whether the officials actually violated those

24

rights. *Id.* at 236. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244, quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999).

## C.    **Fair Presentation and Abandonment of Claims**

Rule 8(a) requires "[a] *pleading*" that contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED.R.CIV.P. 8(a)(2) (emphasis added). "A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)." *Tucker*, 407 F.3d at 788.[2]

When a properly-raised claim is challenged on summary judgment, but never responded to by the non-movant, "[t]his Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown*, 545 F. App'x at 372 (collecting cases).

---

[2] "However, there is another line of recent Sixth Circuit decisions which limit the *Tucker* holding in cases where the change made in response to the motion for summary judgment does not result in unfair surprise because of adequate notification of the new argument." *In re Medcorp, Inc.*, 521 B.R. 259, 268 (N.D. Ohio 2014) (collecting cases); *see also Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009) ("the notice inquiry necessarily proceeds on a case-by-case basis. Sometimes, as we have recognized, a claim raised in response to a summary judgment motion provides sufficient notice to the opposing party."). Because, as discussed below, the Court does not consider Plaintiff's retaliatory prosecution claim to be a newly-raised claim, it need not address whether Defendants were on adequate notice of that argument.

### III.    Analysis

#### A. Fair Presentation

As Defendants correctly note (Doc. #63, PAGEID 1177), Plaintiff devotes much of his memorandum *contra* to arguing that Defendants' conduct constituted retaliatory prosecution, in violation of the First Amendment.  (Doc. #55, PAGEID 1024-43).  Retaliatory prosecution is different in kind from Plaintiff's initial claim of malicious arrest and prosecution, which arises under the Fourth Amendment.  (Doc. #14, PAGEID 87, ¶¶ 71-79).  While both claims require a plaintiff to prove absence of probable cause, *see, e.g., Hartman*, 547 U.S. at 258, retaliatory prosecution requires a plaintiff to prove that "the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).  No such showing of animus is required for malicious prosecution. *See Thompson v. Clark*, 596 U.S. 36, 49 (2022) ("[a] plaintiff need only show that the criminal prosecution ended without a conviction.").  Thus, Plaintiff's retaliatory prosecution argument did not arise out of Claim Four for malicious prosecution.  Moreover, Plaintiff addressing his facial challenge of the statute (Claim One), and his free association claim (Claim Three) separately in his memorandum *contra* (Doc. #55, PAGEID 1043-45) means that he does not view his retaliatory prosecution argument as connected to those claims; nor could he reasonably so argue.

In Claim Two, Plaintiff's "as-applied" challenge, he alleges that "Defendants applied the law to Plaintiff in a manner to retaliate against him for his protected

26

speech" (Doc. #14, PAGEID 84, ¶ 50) and "for offending [Defendants']
sensibilities." (*Id.* at PAGEID 85, ¶ 53). However, Plaintiff does not raise any
allegation specifically with respect to prosecution. Defendants, thus, have a
colorable argument that Plaintiff engaged in "group pleading" that fails to put
Defendants on notice of a retaliatory prosecution claim, much less what each
Defendant is alleged of having done. (Doc. #47, PAGEID 823). Moreover, Plaintiff
has seemingly abandoned an as-applied challenge with respect to Claim Two as
one for violation of First Amendment free speech guarantees by not addressing it
in his memorandum *contra*. Nonetheless, in an attempt to resolve claims on the
merits, the Court will analyze Claim Two as one for retaliatory prosecution in
violation of the First Amendment.

### B. Abandonment

As discussed above, Plaintiff's First Amendment retaliatory prosecution
argument in his memorandum *contra* Defendants' Motion is distinct from his
Fourth Amendment malicious arrest and prosecution Claim Four in the Amended
Complaint. Indeed, the word "malicious" appears nowhere in the memorandum
*contra*, despite Defendants arguing extensively in their Motion that Plaintiff's
claim for malicious prosecution fails as a matter of law. (Doc. #47, PAGEID 830-
33). Accordingly, Plaintiff has abandoned Claim Four, and it must be dismissed
with prejudice.

### C.  Plaintiff's Motion for Partial Summary Judgment

In his Motion, Plaintiff "moves for summary judgment declaring Ohio Revised Code § 2917.11(A)(2) facially unconstitutional." (Doc. #49, PAGEID 872). Plaintiff's Motion is foreclosed by the Amended Complaint, wherein Plaintiff prays that the Court "enjoin *Defendant Yost* from the further enforcement of this Statute and invalidate this Statute" (Doc. #14, PAGEID 84, ¶ 47 (emphasis added)), because *Yost* "is the chief legal officer of the state, with enforcement power over Ohio's disorderly conduct statute[.]" (*Id.* at ¶ 42). However, as discussed above, Yost was dismissed from the case, and the remaining Defendants in the case are Miami County and two Sheriff's Deputies. Plaintiff never states what relief he seeks from Brisset, Blackburn, and Miami County if the statute were to be declared unconstitutional. Moreover, he offers no caselaw, and the Court is unaware of any, supporting the proposition that a *county* and its employees are proper defendants to a lawsuit facially challenging a *state* statute.

This distinction is not semantic, but, rather, at the core of Article III standing: even assuming *arguendo* that the Court agreed with Plaintiff that the statute is unconstitutional, the Court is without power to fashion a remedy given the parties in the case. In other words, Plaintiff's harm alleged in the facial challenge is not redressable by the remaining Defendants. "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies," *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006) (internal

28

quotations omitted), meaning that this Court may not render advisory opinions, which is what Plaintiff seeks.

In sum, the Court lacks the authority at this juncture to declare OHIO REV. CODE §2917.11(A)(2) facially unconstitutional.  As Plaintiff advances no other ground for summary judgment, his Motion for Partial Summary Judgment (Doc. #49) must be overruled.

### D.    Claim One: Facial Challenge

In their Motion and Reply, Defendants argue that Plaintiff lacks standing to bring a facial challenge, because he has not identified an imminent injury that would entitle him to injunctive or declaratory relief.  (Doc. #47, PAGEID 824-25; Doc. #63, PAGEID 1183-84).  A claimant alleging that he has already been injured by an unconstitutional statute has not alleged "an adequate injury in fact to confer standing for declaratory and injunctive relief."  *See Grendell*, 252 F.3d at 832. Plaintiff argues only that he "had standing to challenge the offensive-language provision of OHIO REV. CODE § 2917.11(A)(2) the moment deputies threatened him with arrest for his alleged use of profane language."  (Doc. #49, PAGEID 878-79). Were Plaintiff to have moved for injunctive or declaratory relief at the time of the threat, before the citation was issued, then he may well have had standing. However, his decision to wait until after he was cited and failure to allege any imminent injury or substantial likelihood of future harm means that he cannot obtain such relief as part of a facial challenge.

29

As to his requested relief of damages (Doc. #14, PAGEID 84, ¶ 48), to avoid summary judgment, Plaintiff must show a genuine issue of material fact as to whether "no set of circumstances exists under which the Act would be valid,' *i.e.,* that the law is unconstitutional in all of its applications." *Wash. State Grange*, 552 U.S. at 449 (internal quotation marks and citation omitted). Also, to avoid qualified immunity for Brisset and Blackburn—the only two Defendants against whom Claim One remains pending—Plaintiff must show that the statute's facial invalidity was clearly established. As Defendants note (Doc. #47, PAGEID 826), the "unreasonable noise" portion of the statute has been upheld by the Supreme Court of Ohio as providing "sufficient notice for a person of ordinary intelligence to understand what he or she is required to do under the law[,]" and "incorporat[ing] an objective standard by prohibiting only noise that is 'unreasonable.'" *Carrick*, 2012-Ohio-608 at ¶¶ 12, 20. Thus, Plaintiff is asking the Court to conclude that a particular phrase of a statute's subsection is facially unconstitutional, and that the facial violation was clearly established at the time Brisset and Blackburn issued the citation, even as a different phrase of that same subsection was upheld as constitutional. Plaintiff cites no caselaw that would support such a conclusion. Since Plaintiff's First Amendment rights with respect to the statute, if any, were not clearly established at the time of the issuance of the citation *by Brisset and Blackburn*, those Defendants are entitled to qualified immunity, *Pearson* 555 U.S. at 232, and Claim One fails as a matter of law.

30

### E.    Claim Two: As-Applied Retaliatory Prosecution Challenge

To meet his *prima facie* burden in a claim for retaliatory prosecution, like other First Amendment retaliation claims, Plaintiff must "plausibly show (1) that he was 'engaged in protected conduct,' (2) that the defendant took adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct,' and (3) that the protected conduct caused the adverse action, at least in part." *Susselman v. Washtenaw Cnty. Sheriff's Office*, 109 F.4th 864, 871 (6th Cir. 2024), quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).  A court may "consider the last prong first.  To show causation, a plaintiff must plausibly allege that the defendant would not have taken the adverse action 'absent the retaliatory motive.'" *Id.*, quoting *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019).  Plaintiff must demonstrate "a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury[.]'" *Nieves*, 587 U.S. at 398 (internal citation omitted); *accord: Hartman*, 547 U.S. at 262-66 (holding that plaintiff must show retaliatory animus and but-for causation between that animus and the prosecution without probable cause).

Plaintiff argues that Brisset and Blackburn are not immunized from liability simply because the Miami County deputy prosecutor was the one who actually prosecuted Plaintiff, because Brisset and Blackburn "induced the prosecution." (Doc. #55, PAGEID 1028 (internal quotation marks omitted), citing *Blackwell v. Nocerini*, 123 F.4th 479, 482-84, 489 (6th Cir. 2024)).  In support, Plaintiff asserts

31

that Sheriff's deputies had been responding to noise complaints for more than a year, and simply logged the dispute without citing Plaintiff or anyone else. (*Id.* at PAGEID 1029, citing Doc. #40-1, PAGEID 394-414).  "That changed only when the dispute became about language and when Jacobs asserted his First Amendment rights." (*Id.* at PAGEID 1030, citing Doc. #41-4, PAGEID 454-64).  Plaintiff notes that Blackburn told him that playing Taylor Swift would not subject him to citation. (*Id.*, citing Body Cam Video at 49:04-49:13, 50:33-50:35).

However, even if Brisset and Blackburn's distaste for the music being played at Plaintiff's house constituted animus on their parts, the causal link between that shift and the ultimate prosecution of Plaintiff is too attenuated for Plaintiff to satisfy the third element of retaliatory prosecution, even at the summary judgment stage. *Nieves*, 587 U.S. at 398.  It is undisputed that, after Brisset and Blackburn became aware of the presumed protected speech, they followed Captain Wheeler's instruction not to issue citations unless they witnessed a violation first-hand. (Doc. #41-5, PAGEID 473).

More importantly, there is no dispute that, on November 8, 2023, Brisset closed the case against Plaintiff without any charges. (Doc. #41-5, PAGEID 473).  It was only after Wheeler reversed himself and instructed Brisset and Blackburn to take the case to the Deputy Prosecutor, *and* the Deputy Prosecutor himself directed Brisset and Blackburn to issue the citation, that Plaintiff was subject to prosecution.  Given that Brissett closed the case against Plaintiff without charges, any retaliatory animus by Brissett and Blackburn could not have been the direct

32

and proximate cause of the charge being filed; rather, Wheeler's instruction was a superseding cause. Absent a proximate causal link between any animus and the issuance of the citation, Defendants did not violate Plaintiff's First Amendment rights, and Plaintiff's claim fails as a matter of law.

Alternatively, Defendants are correct that "[t]here is no violation of a clearly established constitutional right when following a supervisor's instruction to complete an investigation and let the prosecutor decide whether any charge should be filed." (Doc. #63, PAGEID 1196, citing *Kinkus v. Vill. of Yorkville, Ohio*, 289 F. App'x 86, 91 (6th Cir. 2008) (collecting cases)). Thus, Brisset and Blackburn are entitled to qualified immunity, and Claim Two fails for that reason as well.

### F. Claim Three: First Amendment Association

Plaintiff clarifies in his memorandum *contra* that he is bringing a First Amendment claim—specifically, that the decision to charge Plaintiff grew out of his association with his son, the one who was playing the supposedly offensive music. (Doc. #55, PAGEID 1043-44). He argues that "[i]t is enough that Jacobs associated with his son in a way that involved listening to music and, together, pushing back against government efforts to suppress that speech." (*Id.* at PAGEID 1044-45, citing *Roberts*, 468 U.S. at 622; *Miller*, 622 F.3d at 538–39).

In a First Amendment free speech association claim, the Court evaluates whether: (1) "the identified group [may] seek freedom-of-association 'protection' because its members associate partly to express a message"; (2) "the challenged state action 'significantly burden[s]' the group's ability to spread its message";

33

and (3) the "burden on speech outweigh[s] any governmental interests justifying the burden[.]" *Blick*, 105 F.4th at 882 (citations omitted).  While the *Blick* Court decided the case on other grounds, it expressed doubt that the plaintiff's association—a group of parents organized informally and solely for the purpose of supporting her at a school board meeting—could avail itself of First Amendment free association protection:

> At the outset, it is not clear that these allegations meet the first element of our freedom-of-association test.  [Appellant] cites no case that has treated an informal and *ad hoc* group (parents who seek to attend a school-board meeting) as an "expressive association" entitled to First Amendment protection.  Most Supreme Court cases have instead involved formal entities like the Boy Scouts, the NAACP, or other charitable organizations.

*Id.* at 884, citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, (2000).

There is no evidence of record indicating that Plaintiff and his son had even formed an *ad hoc* group for the purpose of playing explicit music.  (*See, e.g.*, Doc. #38-1, PAGEID 325, 327 (Plaintiff testifying that "[t]here's no objective behind any music being played if I play music[,]" and that "I told [the deputies] that I was not playing music.")).  Even if they had, however, *Blick* demonstrates that any extension of First Amendment free association rights to encompass Plaintiff was not clearly established at the time of the issuance of the citation.  Thus, Brisset and Blackburn are entitled to qualified immunity as to Claim Three.

### G.    *Monell* Liability

In his memorandum *contra*, Plaintiff argues that, by suing Brisset and Blackburn in their official capacities, he put Miami County on "clear notice that

34

Plaintiff seeks to hold the County responsible for its own policies, customs, and decisions, not only for individual misconduct." (Doc. #55, PAGEID 1052, citing *Kentucky v. Graham*, 473 U.S. 159, 165, 166 (1985)). However, while Miami County is named as a Defendant in the Amended Complaint, Plaintiff did not plead: (1) the existence of a specific unlawful policy; (2) that a particular Miami County official ratified the decision of Brisset and Blackburn to issue the citation to Plaintiff; (3) that Miami County officials failed to train and supervise adequately Sheriff's deputies; or (4) "the existence of a custom or tolerance of acquiescence of federal rights violations." *Lipman v. Budish*, 974 F.3d 726, 746 (6th Cir. 2020). In other words, Plaintiff never put Defendants on notice of his intent to pursue a *Monell* theory of liability against Miami County until his memorandum *contra*. As Plaintiff failed to put Miami County on notice of a potential *Monell* claim, FED.R.CIV.P. 8(a)(2), such a claim fails for that reason alone.

Moreover, *Monell* liability is derivative; if a plaintiff cannot demonstrate that a city or county employee violated his constitutional rights, then he cannot hold the employing municipal or county entity under *Monell*. *Blick* is again instructive:

> [Plaintiff] sought to hold the School District (the entity) liable for its alleged "policy or custom" of violating its employees' First Amendment rights. We can make short work of this argument. We have repeatedly held that a plaintiff cannot hold a city liable for an unconstitutional policy unless the policy led to a violation of the plaintiff's *own* rights. Because Blick failed to show that any school officials violated her First Amendment rights, her *Monell* claim against the District necessarily fails too.

105 F.4th at 884 (emphasis in original), citing *Farris v. Oakland Cnty.*, 96 F.4th 956, 968-69 (6th Cir. 2024); *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1165 (6th Cir. 2021). As Plaintiff failed to show that Brisset or Blackburn violated his constitutional rights, Miami County may not be held liable under *Monell*. Since Plaintiff advances no alternate theory of liability, in his memorandum *contra* or elsewhere, Miami County is entitled to summary judgment in full.

## IV. Conclusion

For the foregoing reasons, Defendants Brisset, Blackburn, and Miami County's Motion for Summary Judgment (Doc. #47) is SUSTAINED, and Plaintiff's Motion for Partial Summary Judgment (Doc. #49) is OVERRULED. Judgment shall enter in favor of Defendants and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.[3]

IT IS SO ORDERED.

February 18, 2026

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

---

[3] The Thens' Motion for Attorney Fees (Doc. #51) is fully briefed and remains pending before this Court, but does not prevent the Court from issuing final judgment. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988). The Motion will be ruled upon by the Court within the next several weeks.